UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────

HOLLY SWEAT,

                      Plaintiff,

                 V.

MICHAEL ASTRUE,
Commissioner of Social Security,

                   Defendant.

───────────────────────────────────

**REPORT AND
RECOMMENDATION**

08-CV-1108
(FJS/VEB)

## I. INTRODUCTION

In June of 2005, Plaintiff Holly Sweat filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she was unable to work between April of 2005 and October of 2007 due to a heart condition, asthma, carpal tunnel syndrome, and depression. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorneys, Fusco Bradenstein & Rada, P.C, John Antonowicz, Esq., of counsel, commenced this action on October 16, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 11).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for DIB and SSI benefits on June 22, 2005, alleging disability beginning on April 27, 2005. (T at 26, 52).[1]  The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on December 5, 2007, via videoconference before ALJ John M. Farley. (T at 304).  Plaintiff appeared with an attorney and testified. (T at 307-315).  At the hearing, Plaintiff amended her applications to allege a closed period of disability from April 27, 2005, to October 4, 2007, when Plaintiff returned to full-time employment. (T at 307).

On January 24, 2008, the ALJ issued a decision denying Plaintiff's applications. (T at 17-24).  The ALJ's decision became the Commissioner's final decision on September 10, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 5-7).

Plaintiff, through counsel, timely commenced this action on October 16, 2008. (Docket No. 1).  The Commissioner interposed an Answer on February 6, 2009. (Docket No. 6).  Plaintiff filed a supporting Brief on March 20, 2009. (Docket No. 7).  The Commissioner filed a Brief in opposition on April 24, 2009. (Docket No. 11).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 4).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

2

motion be denied, Plaintiff's motion be granted, and this case be remanded for further administrative proceedings.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements under the Social Security Act through December 31, 2009. The ALJ found that Plaintiff did not engage in substantial gainful activity during the closed period of alleged disability beginning on April 27, 2005, and ending on October 4, 2007. The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: cardiomyopathy, transient ischemic attacks, asthma, and depression. (T at 19).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 20).  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, provided the work did not require understanding and performing complex instructions. (T at 21).

5

The ALJ determined that Plaintiff could perform her past relevant work as a clerk during the closed period of alleged disability. (T at 23).  Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined under the Social Security Act, from the alleged onset date to the date of the ALJ's decision. (T at 24).  As noted above, the ALJ's decision became the Commissioner's final decision on September 10, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 5-7).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers four (4) principal arguments.  First, Plaintiff challenges the ALJ's severity assessment at step two of the sequential evaluation process.  Second, Plaintiff argues that the ALJ's residual functional capacity determination was flawed.  Third, she contends that the ALJ did not properly assess the medical opinion evidence.  Fourth, Plaintiff asserts that the ALJ did not appropriately evaluate her credibility.  This Court will address each argument in turn.

### a.    Severity Assessment

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §

404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In this case, Plaintiff underwent an EMG/nerve conduction study, which showed findings consistent with clinical carpal tunnel syndrome. (T at 104).  Dr. Tang, a treating doctor, noted "reduced grip" in Plaintiff's right hand. (T at 96).  Dr. Briggs, a consultative examiner, also found decreased grip strength in the right hand and noted a diagnosis of carpal tunnel syndrome. (T at 197).

The ALJ concluded that Plaintiff suffered from the following severe impairments: cardiomyopathy, transient ischemic attacks, asthma, and depression. (T at 19).  The ALJ made no finding with regard to the severity of Plaintiff's carpal tunnel syndrome.  Plaintiff contends that a remand is required because of the ALJ's failure to make a finding regarding the severity of this carpal tunnel impairment.

This Court finds no reversible error with respect to this aspect of the ALJ's decision.

As noted above, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman, 895 F. Supp. at 53. Further, the ALJ is not required to specifically discuss each piece of evidence considered. Barringer v. Comm'r, 358 F.Supp.2d 67, 78-79 (N.D.N.Y. 2005) (noting that an ALJ's failure to cite specific evidence does not mean it was not considered) (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)).

In this case, the record contained sufficient evidence to sustain a conclusion that Plaintiff's carpal tunnel syndrome had no more than a minimal effect on her ability to work. For example, Plaintiff's treating nurse practitioner opined that Plaintiff had normal motor strength and grip strength and no gross/fine motor manipulation limitations. (T at 170-71). Dr. Atkinson, a consultative examiner, found grip strength to be "5/5 bilaterally." (T at 180). Although Dr. Atkinson noted decreased pinprick sensation in Plaintiff's right hand fingers, she found no muscle atrophy and did not indicate any limitations with regard to handling or grasping objects. (T at 181).  Dr. Puri, another consultative examiner, made similar findings. (T at 231-32).

During a portion of the alleged period of disability, Plaintiff worked as a bank teller on a part-time basis. (T at 308).  Examination of a comparable job description in the Dictionary of Occupational Titles ("DOT") indicates that work similar to that performed by Plaintiff involves significant gripping and handling of small objects. See DOT Code 211.362-018 (TELLER (financial))("Receives and pays out money, and keeps records of money and negotiable instruments involved in financial transactions: Receives checks and cash for deposit, verifies amount, and examines checks for endorsements. Cashes checks and pays

out money after verification of signatures and customer balances. Enters customers' transactions into computer to record transactions, and issues computer-generated receipts. Balances currency, coin, and checks in cash drawer at end of shift, using calculator, and compares totaled amounts with data displayed on computer screen. May use typewriter, photocopier, and check protector to prepare checks and financial documents."). Plaintiff testified that she was unable to work on a full-time basis as a teller because of fatigue, stress, and difficulty standing, with no mention of any symptoms related to carpal tunnel syndrome. (T at 310-11).

Moreover, because the ALJ concluded that Plaintiff had other impairments considered severe under the Act (i.e., cardiomyopathy, transient ischemic attacks, asthma, and depression) and continued with the sequential analysis, any arguable error with regard to his failure to address carpal tunnel at step two was harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two

9

and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

Accordingly, this Court finds no reversible error with respect to the ALJ's step two analysis.

### b.    RFC Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ concluded that Plaintiff retained the RFC to perform light work, provided such work did not require the understanding and performance of complex instructions.  (T at 21).  Plaintiff contends that the ALJ did not properly consider her carpal tunnel syndrome in assessing her RFC.  This argument is unavailing. As discussed above, the record does not indicate that Plaintiff's carpal tunnel syndrome had more than a minimal

impact on her ability to perform basic work-related activities.

In addition, Plaintiff argues that the ALJ did not adequately account for her difficulties dealing with stress.  This argument is meritorious and a remand should be ordered on this basis. Dr. Annette Payne, a consultative psychiatric examiner, found Plaintiff to be anxious and depressed. (T at 235).  Dr. Payne noted problems with attention and concentration and opined that Plaintiff had "difficulties relating with others and dealing with stress." (T at 236). Dr. Kerry Brand, another consultative psychiatric examiner, opined that Plaintiff "may have difficulty maintaining a regular schedule" and "have difficulty dealing appropriately with stress." (T at 186).  Dr. Brand indicated that the results of his examination appeared to be "consistent with some psychiatric problems which may interfere with [Plaintiff's] ability to function on a daily basis." (T at 186).  Plaintiff testified that she experienced problems with stress and relating to others during her part-time employment as a bank teller. (T at 312).

The ALJ noted the consultative examiners' findings that Plaintiff would have difficulty dealing with stress, but did not explain how he reconciled those findings with his RFC assessment (which contained no determination regarding stress). (T at 23).  Further, the ALJ concluded that Plaintiff could perform her past relevant work as a medical billing clerk and clerk for the Board of Elections. (T at 23).  However, the ALJ did not make any findings concerning the stress levels involved with those jobs.  The job history report provided by Plaintiff (T at 63-65), which the ALJ cited in support of his past relevant work determination, contains no information regarding the amount of stress involved with the clerk positions. Plaintiff was not questioned about this issue at the hearing.

Accordingly, this Court finds that the ALJ's RFC determination and finding that Plaintiff could perform her past relevant work are not supported by substantial evidence.

Further development in the record is needed concerning Plaintiff's ability to deal with stress. Dr. Payne indicated that Plaintiff was receiving outpatient psychiatric treatment at a Veterans Administration Medical Center, meeting with a Dr. Simor one to two times per month.  (T at 233).

Given the consultative examiners' findings concerning Plaintiff's non-exertional limitations (*e.g.,* difficulty dealing with stress, maintaining a regular schedule), the ALJ certainly should have sought to obtain copies of these treatment records, including Dr. Simor's assessment concerning the nature and extent of Plaintiff's psychiatric limitations.[4] It is well-settled in this Circuit that in light of the "'essentially non-adversarial nature of a benefits proceeding,'" the ALJ has an affirmative duty to develop the record, even where (as here) the claimant was represented by counsel. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996) (quoting Echevarria v. Secretary of Health and Human Services, 685 F.2d 751, 755 (2d Cir.1982)); see also Shaw v. Chater, 221 F.3d 126, 131 (2d Cir.2000); Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996).

In sum, the ALJ erred by making no finding with regard to Plaintiff's difficulties dealing with stress.  Given the consultative examiners' assessments and Plaintiff's testimony, such a finding was a necessary part of determining Plaintiff's RFC and ability to perform her past relevant work.  The record was not adequately developed as to this issue.  Specifically, an effort should have been made to obtain treatment records from Plaintiff's outpatient psychiatric treatment, including (in particular) the assessment of Dr. Simor, who was apparently treating Plaintiff with regard to her psychiatric difficulties.

---

[4]If such records were available, Plaintiff's counsel also was under a duty to obtain them and make them part of the administrative record.

Lastly, the ALJ's RFC assessment did not detail Plaintiff's specific limitations on a "function by function" basis. (T at 21).  Pursuant to the relevant Regulations, the RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). To determine RFC, the ALJ must make a function- by-function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity. 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); Martone v. Apfel, 70 F.Supp.2d 145, 150 (N.D.N.Y.1999). Only after that analysis is completed, may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy. Hogan v. Astrue, 491 F.Supp.2d 347, 354 (W.D.N.Y.2007).

In failing to do a function-by-function assessment, the ALJ may have made the mistake warned of in SSR 96-8p by overlooking some of the claimant's limitations or restrictions. Mardukhayev v. Comm'r of Social Sec., 2002 WL 603041, at *5 (E.D.N.Y.2002) (internal citation omitted) (failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions).

Accordingly, it is respectfully recommended that this case be remanded for further administrative proceedings.  On remand, the ALJ should (i) address the consultative examiners' findings that Plaintiff had difficulty dealing with stress during the relevant time period; (ii) further develop the record by obtaining medical records and assessments from Plaintiff's outpatient psychiatric treatment (including, but not necessarily limited to, an

13

assessment from Dr. Simor); (iii) obtain evidence concerning the amount of stress involved with Plaintiff's past relevant work; and (iv) accompany his RFC determination with a function-by-function assessment, as required under the applicable Regulations.

### c.    Consideration of Medical Opinion Evidence

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, an ALJ should consider the following factors when determining the proper weight to afford to the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, Plaintiff's primary treating source for her physical impairments was Jane Nugent, a nurse practitioner.  In August of 2005, Ms. Nugent opined that Plaintiff was

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

limited to occasionally lifting 10 pounds and standing for 2 hours in an 8-hour workday. (T at 176-77).  Ms. Nugent found no limitation with regard to sitting, but concluded that Plaintiff had unspecified limitations with regard to pushing and pulling. (T at 177).

The ALJ found that Ms. Nugent's conclusion were contradicted by her treatment notes and not consistent with the balance of the medical evidence. (T at 23).  The ALJ discounted Ms. Nugent's opinion and credited the assessment of a non-examining State Agency review consultant to the effect that Plaintiff retained the RFC to perform light work. (T at 23).  For the reasons stated above, this Court finds that the ALJ's RFC assessment was flawed and the record was inadequately developed concerning Plaintiff's non-exertional limitations.  However, this Court finds no error with respect to the ALJ's consideration of Ms. Nugent's opinion or the ALJ's assessment of Plaintiff's exertional limitations.

Not all health care providers are "treating sources" under the Social Security Act. A treating source is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502.  There are five categories of "acceptable medical sources." 20 C.F.R. § 404.1513 (a).  A nurse practitioner is not included in any of these categories.  Rather, a nurse practitioner is included among "other sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work. 20 C.F.R. § 416.913(d)(1).

Accordingly, because the Regulations do not classify nurse practitioners as an "acceptable medical source," the ALJ was not bound to give Ms. Nugent's opinion

controlling weight. See Velasquez v. Barnhart, No. 03 Civ. 6448, 2004 WL 1752825, at *3 n. 49 (S.D.N.Y. Aug. 4, 2004)("The Regulations allow a lower level of consideration to be given to these 'other sources,' but 'under no circumstances can the regulations be read to require the ALJ to give controlling weight' to such sources.").

This Court is mindful that while an "other source" opinion is not treated with the same deference as a treating physician's opinion, the assessment is still entitled to some weight, especially when there is a long-standing treatment relationship with the claimant. Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); see also Mejia v. Barnhart, 261 F.Supp.2d 142, 148 (E.D.N.Y.2003 (finding that the ALJ should have afforded a treating therapist's opinions at least a little weight where the therapist "saw plaintiff on a regular basis and [ ] offered a diagnosis consistent with that of the treating psychiatrist"); White v. Comm'r, 302 F.Supp.2d 170, 174-76 (W.D.N.Y.2004) (reversing where the ALJ failed to give appropriate weight to the plaintiff's social worker, who had a regular treatment relationship with the plaintiff and whose diagnosis was consistent with the treating psychiatrist); Rivera v. Bowen, 665 F.Supp. 201, 206 (S.D.N.Y.1987) (finding that the opinions of chiropractors and physical therapists must be accorded at least some weight).

In this particular case, this Court finds that the ALJ afforded an appropriate weight to Ms. Nugent's assessment. The Second Circuit has held that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir.1995).  Here, the ALJ

16

reasonably concluded that Ms. Nugent's assessment of significant limitation was contradicted by her own findings, which indicated that Plaintiff was not being treated for pain, that her prognosis was "good," and that the duration of her condition was expected to be two to three months. (T at 168-74).

Additional support for the ALJ's assessment of Plaintiff's exertional limitations (and his decision to discount Ms. Nugent's opinion) is found in the reports provided by examining and non-examining sources.  For example, Dr. Atkinson, a consultative examiner, found no limitations, except heavy lifting and rising too quickly after prolonged sitting. (T at 181). Dr. Briggs, another consultative examiner, found diminished grip strength in the right upper extremity, but otherwise indicated no exertional limitations. (T at 197).  Dr. Puri, a consultative examiner, opined that Plaintiff should "not carry out strenuous activity," but otherwise found "no objective limitations to [Plaintiff's] gait or activities of daily living . . . ." (T at 232).

The non-examining State Agency review consultant reviewed the medical records and opined that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk/sit for 6 hours in an 8-hour workday, and had no limitation with regard to pushing/pulling. (T at 206).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation

of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants are supported by the weight of the evidence. See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002)(holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

As such, this Court finds no error with regard to the ALJ's consideration of the medical evidence as it related to Plaintiff's exertional impairments.

### d. Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to

18

enable us to decide whether the determination is supported by substantial evidence." Lewis

v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's

contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an
> underlying medically determinable physical or medical
> impairment (s) ... that could reasonably be expected to produce
> the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity,
> persistence, and limiting effects of the individual's symptoms to
> determine the extent to which the symptoms limit the
> individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the

claimant's pain contentions are not supported by objective medical evidence, the ALJ must

consider the following factors in order to make a determination regarding the claimant's

credibility:

> 1.   [Claimant's] daily activities;
> 2.   The location, duration, frequency and intensity of
>      [Claimant's] pain or other symptoms;
> 3.   Precipitating and aggravating factors;
> 4.   The type, dosage, effectiveness, and side effects of any
>      medication [Claimant] take[s] or ha[s] taken to alleviate
>      ... pain or other symptoms;
> 5.   Treatment, other than medication [Claimant] receive[s]
>      or ha[s] received for relief of ... pain or other symptoms;
> 6.   Any measure [Claimant] use[s] or ha[s] used to relieve
>      ... pain or other symptoms;
> 7.   Other factors concerning [Claimant's] functional
>      limitations and restrictions due to pain or other
>      symptoms.

If the ALJ finds that the claimant's pain contentions are not credible, he or she must

state his reasons "explicitly and with sufficient specificity to enable the Court to decide

whether there are legitimate reasons for the ALJ's disbelief." <u>Young v. Astrue</u>, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting <u>Brandon v. Bowen</u>, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as to significant non-exertional impairments that prevented her from engaging in substantial gainful activity during the alleged period of disability. Specifically, she described persistent fatigue, difficulty dealing with stress, and problems relating with others. (T at 310-12, 314).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements regarding the intensity, persistence, and limited effects of the symptoms was not entirely credible. (T at 22). This credibility assessment must be revisited on remand.

First, the ALJ's decision to discount Plaintiff's credibility was (a) based upon an underdeveloped record with regard to Plaintiff's non-exertional limitations (*e.g.*, it did not include records from her outpatient psychiatric treatment) and (b) flawed because the ALJ did not reconcile the consultative examiners' assessment that Plaintiff had difficulty dealing with stress and maintaining a regular schedule with his finding that Plaintiff's testimony was not credible.

Second, it is not clear that the ALJ afforded Plaintiff's testimony enhanced credibility based upon her excellent work history. (T at 50, 315). <u>See</u> <u>Rivera v. Schweiker</u>, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

On remand, the ALJ must revisit the question of Plaintiff's credibility after further development of the record and with consideration to the issues identified above.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" <u>Butts v. Barnhart</u>, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." <u>Kirkland v. Astrue</u>, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is respectfully recommended that this case be remanded for further proceedings consistent with this Report and Recommendation.


## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Commissioner's motion be denied, the decision of the Commissioner be reversed, and this case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.


Respectfully submitted,



Victor E. Bianchini
United States Magistrate Judge

Dated:   May 23, 2011
          Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

May 23, 2011

Victor E. Bianchini
United States Magistrate Judge